12-68-cr
United States v. White

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of November, two thousand thirteen.

Present:
> ROBERT D. SACK,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges,*

---

United States of America,

> *Appellee*,

> v.                                                                                   No. 12-68-cr

Carl White, AKA Sharif Jalil,

> *Defendant-Appellant*.[*]

---

FOR APPELLANT:        Harry Sandick, Melissa R. Ginsberg, Patterson Belknap Webb & Tyler LLP, New York, NY.

FOR APPELLEE:         Joseph J. Karaszewski, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

---

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of parties above.

1

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Carl White, a/k/a Sharif Jalil ("Jalil"), appeals from the district court's judgment convicting him, following a jury trial, of making a materially false statement to a federal agent, in violation of 18 U.S.C. § 1001(a)(2). On appeal, Jalil principally argues that he was deprived of a fair trial because the prosecutor improperly acted as an "unsworn witness" at trial. Jalil also argues that the district court erroneously instructed the jury regarding the materiality element of the false statement charge, and that the prosecutor made various improper remarks during closing arguments. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the specific issues on appeal.

I.      **Unsworn Witness Claim**

Under certain circumstances, an attorney who has "first-hand knowledge of the events presented at trial" may impermissibly act as an unsworn witness. *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993); *see also Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir. 1995) (holding that defense counsel acted as an unsworn witness when he sought to impeach a government witness regarding statements that the government witness had previously made to counsel), *abrogated in part on other grounds as stated in Mickens v. Taylor*, 535 U.S. 162, 172 n.3 (2002). An attorney who acts as an unsworn witness should be disqualified as counsel, in part to prevent the attorney from "subtly impart[ing] to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Locascio*, 6 F.3d at 933. Without more, however, a prosecutor does not become an unsworn witness merely because

2

he has first-hand knowledge of the events that culminated in a defendant's trial. *See United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) ("Standing alone, the mere fact that a prosecutor took part in grand jury proceedings in which a defendant presented false testimony should not bar that prosecutor from participating in a subsequent trial for perjury."). A problem arises, we have suggested, where there is some "indication in the record that [the prosecutor] sought to use [his] first-hand knowledge of [the] case to influence the jury." *Id.*

Because defense counsel did not object to the line of questioning in which the prosecutor is claimed to have acted as an unsworn witness, we review this issue for plain error. *See United States v. Kaiser*, 609 F.3d 556, 564 (2d Cir. 2010). Under this standard, Jalil must demonstrate that any error "(1) is clear or obvious, rather than subject to reasonable dispute; (2) affected [his] substantial rights—i.e., that there is a reasonable probability that the error affected the outcome of the trial; and (3) seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 565 (internal quotation marks omitted, alteration in original).

Jalil claims that the prosecutor acted as an unsworn witness by eliciting testimony from two government witnesses regarding the prosecutor's own role in the events leading to the filing of the § 1001 charge against Jalil. Most significantly, this testimony highlighted the prosecutor's role in deciding that Jalil would not be appearing before a grand jury to testify regarding his knowledge of a murder after he falsely disavowed a prior statement made to law enforcement about that murder. Even assuming that the elicitation of this testimony was improper, however, there is no basis for concluding that it affected the outcome of the trial. Contrary to Jalil's argument, the challenged testimony was not sufficiently integral to the materiality of his false statement to warrant a finding of prejudice. Under § 1001, "[a] false statement is material if it has a 'natural tendency to influence, or is capable of influencing, the decision of the

3

decisionmaking body to which it was addressed.'" *United States v. Whab*, 355 F.3d 155, 163 (2d Cir. 2004) (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)). Jalil fails to demonstrate that, absent the challenged testimony, there is a reasonable probability that the jury would not have found that his false disavowal of his prior statement—which contained a substantial amount of detailed information implicating certain individuals in a murder—had the tendency or capability to influence the government's investigation of that murder. Jalil thus cannot make the requisite showing of plain error in connection with his claim that the prosecutor acted as an unsworn witness at trial.

## II.  The District Court's Jury Instructions

"As a general matter, we review a properly preserved claim of error regarding jury instructions *de novo*, reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (internal quotation marks omitted). However, "[a] party who objects to any portion of the instructions . . . must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate," Fed. R. Crim. P. 30(d), and the failure to "make such a particularized objection in the district court" warrants reviewing the challenged instructions for plain error, *United States v. Weintraub*, 273 F.3d 139, 145 (2d Cir. 2001).

Here, the district court instructed the jury as follows with respect to the materiality element of the § 1001 charge:

> The second element the government must prove beyond a reasonable doubt is that the defendant's statement or representation was material. A fact is material if it could have influenced the government's decision or activities. However, proof of actual reliance on the statement by the government is not required.

JA at 519. Jalil did not specifically object to this instruction on the grounds he now asserts, *i.e.*, that the instructions erroneously indicated that materiality depends on whether the false

4

statement at issue "could have influenced" the government's decision, rather than on whether the false statement "had the natural tendency to influence" that decision. We thus review the instructions for plain error.

Even generously assuming that the district court erred in using the phrase "could have influenced" instead of "has a natural tendency to influence, or is capable of influencing," *see Whab*, 355 F.3d at 163, any such error was certainly not plain. As already indicated, under the circumstances, Jalil's false disavowal of his prior statement implicating certain individuals in a murder plainly had the "natural tendency to influence" the government's investigation of that murder. *Cf. United States v. Adekanbi*, 675 F.3d 178, 183 (2d Cir. 2012) (holding that, "[a]s a matter of common sense," a false statement made to officials conducting a safety-valve proffer had a "natural tendency to influence" those officials, in part because the false statement could have "impede[d] the government's ability to develop information about the subject crime"); *see also* JA at 300 (trial testimony of federal agent Christopher Robinson that Jalil's false disavowal of his prior statement "was a detraction upon the [murder] investigation" and "called into question the corroboration of other witnesses that [the government] had brought forward"). Accordingly, Jalil has not demonstrated that any error in the district court's jury instructions affected his substantial rights. His challenge to those instructions must fail, therefore, under the applicable plain error standard of review.

## III.    Prosecutorial Misconduct

"As a general matter, a defendant asserting that a prosecutor's remarks warrant a new trial faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *Coplan*, 703 F.3d at 86 (internal quotation marks omitted). "We will reverse on the ground of prosecutorial misconduct only if that

5

misconduct caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Whitten*, 610 F.3d 168, 202 (2d Cir. 2010) (internal quotation marks omitted). "In considering whether inappropriate remarks rise to the level of prejudicial error, we examine the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *Coplan*, 703 F.3d at 86 (internal quotation marks omitted).

Here, Jalil challenges the prosecutor's statements during summation that (1) as a result of Jalil's false statement, "*we* didn't put [Jalil] in the grand jury" and "*our* prosecution against [certain defendants charged with murder] is weaker," JA at 474-75 (emphasis added); (2) certain government witnesses would have devised a more convincing lie had they fabricated their version of the events, *id*. at 491; and (3) in order to credit Jalil's assertion that he had not made the statement at issue, the jury "would have to conclude that [certain government witnesses] came in here and . . . swore to tell the truth and lied," *id*. at 472-73. Even assuming that these statements were improper, however, there is no indication that they "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Whitten*, 610 F.3d at 202. In particular, this alleged misconduct does not substantially undermine the certainty of Jalil's conviction. *See Coplan*, 703 F.3d at 86. We thus reject Jalil's argument that his conviction should be reversed based on prosecutorial misconduct.

We have considered Jalil's remaining arguments on appeal and find them to be without merit. Accordingly, the district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6