*United States v. Simmons*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand twenty-five.

PRESENT:

>> RICHARD J. SULLIVAN,
>> ALISON J. NATHAN,
>> MARIA ARAÚJO KAHN,
>> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>> *Appellee*,

>> v.                                                                                  No. 23-6771

STEPHEN SIMMONS,

>> *Defendant-Appellant*.

_____

For Defendant-Appellant:    SARAH BAUMGARTEL, Assistant Federal Defender, Federal Defenders of New York, New York, NY.

For Appellee:    COURTNEY HEAVEY (Jamie Bagliebter, Nathan Rehn, *on the brief*), Assistant United States Attorneys, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 12, 2023 judgment of the district court is **AFFIRMED**.

Stephen Simmons appeals from a judgment of conviction following a jury trial in which he was found guilty of possessing ammunition as a felon under 18 U.S.C. § 922(g)(1) during the course of a shooting in the Bronx. Although the shooting did not constitute an element of the count of conviction, the district court concluded that the shooting constituted attempted murder and thus applied the Sentencing Guideline for attempted murder before sentencing Simmons to 120 months' incarceration. On appeal, Simmons challenges both his conviction under section 922(g)(1) and his sentence under the attempted murder Guideline. We

2

assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Jury Instructions

Simmons raises two challenges to the jury instructions, neither of which he preserved below. When a challenge to a jury instruction was raised before the district court, we review the instruction *de novo*. *See United States v. Rommy*, 506 F.3d 108, 118 (2d Cir. 2007). But when the challenge was not preserved, we review it only for plain error. *See* Fed. R. Crim. P. 52(b). We will correct such an error only when it is "clear and obvious, affected the defendant['s] substantial rights, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mehta*, 919 F.3d 175, 180 (2d Cir. 2019). To be clear or obvious, an error must be "clear under current law," which generally requires "binding precedent from the Supreme Court or this Court" that dictates a different conclusion. *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004). In order to show that the error affected his "substantial rights," the defendant has the burden of establishing a "reasonable probability that the error affected the outcome of the trial." *United States v. Groysman*, 766 F.3d 147, 155 (2d Cir. 2014) (internal quotation marks omitted).

**A.  Jury Instruction Regarding Immunized Witness Testimony**

Simmons first argues that the district court plainly erred in giving a charge that "did not instruct the jury to scrutinize immunized witness testimony with care."   Simmons Br. at 29.   At trial, the government relied heavily on testimony by Jonas Bolden – the shooting victim – and his associate Joe Holloway, each of whom testified that Simmons had followed Bolden into an elevator and shot him at close range while Holloway looked on.   Because their testimony revealed that they were involved in drug trafficking, both Bolden and Holloway testified pursuant to immunity agreements.   The government thus proposed an immunized witness charge – "[a]dapted" from a model jury instruction – that the district court largely adopted without objection from Simmons.   App'x at 900–02 (citing Sand, Modern Federal Jury Instructions - Criminal, Instr. 7–8 (2023)).   As delivered, the instruction explained that "[t]wo witnesses testified under a grant of immunity" and directed the jury to consider "whether the fact that the witness[es] w[ere] immunized ha[d] intentionally or otherwise colored or distorted [their] testimony."   App'x at 849.

Simmons argues that this charge was incorrect because – unlike the model instruction – it did not direct the jury to "examine[]" the testimony of an

4

immunized witness with "greater care than the testimony of an ordinary witness" or to "scrutinize [the testimony] closely." Simmons Br. at 19–20. But we cannot agree that this was plain error, for the simple reason that no "binding precedent" has found error where a district court failed to instruct the jury that it must use greater scrutiny when inspecting the testimony of an immunized victim. *Whab*, 355 F.3d at 158. In fact, we have never imposed that level of scrutiny on testimony by *cooperating* witnesses, who may have an even greater "interest in currying favor with the prosecutor" than immunized victims. *United States v. Vaughn*, 430 F.3d 518, 524 (2d Cir. 2005) (requiring only that district courts "identify" for the jury any "possible motivations" that a cooperating witness may have and stating that courts need not "over-emphasize the obvious [fact]" that cooperators are biased). Because Simmons lacks binding precedent to support his claim of error, he cannot demonstrate plain error here.[1]

---

[1] We also reject Simmons's argument that the government "misled" the jury about the scope of Bolden's and Holloway's immunity. Simmons Br. at 33. The agreements gave Bolden and Holloway immunity from prosecution based on any evidence that directly or indirectly derived from their testimony. *See* App'x at 903–06. But both could still be prosecuted with evidence obtained through wholly independent means, as the government argued to the jury. *Id.* at 827; *see also United States v. Allen*, 864 F.3d 63, 91–92 (2d Cir. 2017).

5

**B.      Limiting Instruction Regarding Prior Felony Conviction**

Simmons next asserts that the district court should have given a limiting instruction concerning Simmons's prior felony conviction.   But while Simmons requested that instruction in his pretrial briefing, he never asked for one at trial. His argument on appeal is thus subject to plain error review.   *See United States v. Crowley*, 318 F.3d 401, 413 (2d Cir. 2003) ("[T]he mere fact that a defendant submitted his proposed language as part of a requested charge does not in itself preserve the point for appeal.").

Even assuming that Simmons has established any "clear and obvious" error, *Mehta*, 919 F.3d at 180, he falls well short of meeting his burden to show a "reasonable probability" that a limiting instruction would have led to his acquittal. *Groysman*, 766 F.3d at 155 (internal quotation marks omitted).   The fact that Simmons had a prior conviction was introduced by a stipulation and the jury heard no underlying (and potentially prejudicial) details about it.   *See* App'x at 721.   And the government introduced evidence of Simmons's guilt from a host of other sources, including Bolden's and Holloway's eyewitness identifications, Simmons's cell phone records, surveillance video, and testimony from other witnesses about inculpatory statements made by Simmons about the shooting.

6

Because nothing in the record suggests that a limiting instruction would have altered the verdict, we reject Simmons's claim of plain error.

## II. Evidentiary Issues

Simmons also challenges two of the district court's evidentiary decisions. We review preserved evidentiary challenges for abuse of discretion, under which we will find error "only where the trial judge ruled in an arbitrary or irrational fashion." *United States v. Kelley*, 551 F.3d 171, 174–75 (2d Cir. 2009) (internal quotation marks omitted). We review unpreserved evidentiary arguments for plain error. *See United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007).

### A. Lay Opinion Testimony Regarding Cell Phone Usage

Simmons first contends that the district court permitted the government to elicit lay opinion testimony as to Simmons's physical location at the time of the shooting based on his cellphone records. He argues that this was improper because the government witness was not qualified as an expert and because the witness's lay opinion testimony usurped the role of the jury. Because Simmons did not raise this objection at trial, we review for plain error. *See id.*

Federal Rules of Evidence 701 and 702 permit both lay and expert witnesses to offer opinion testimony. Rule 701 authorizes a lay witness to offer her opinion

about events that she personally perceived, so long as that opinion will assist the jury and is not based on "specialized knowledge" within the scope of Rule 702. Fed. R. Evid. 701(c). Rule 702 allows an expert witness to give an opinion based on her "scientific, technical, or other specialized knowledge," provided that the opinion is based on "sufficient facts or data" and is the "product of reliable principles and methods." Fed. R. Evid. 702.

At trial, the government introduced several pieces of evidence that linked Simmons's cell phone to the shooting, including cell site data that put the phone in the vicinity of the victim and a brief text conversation shortly before the shooting in which another user instructed Simmons to "[w]ild . . . up" on an unnamed person and then notified Simmons that "[h]e rite here." App'x at 685–89, 763. After Simmons suggested that other individuals sometimes used the cell phone – and may have had it when the shooting occurred on June 16, 2022 – the government called an FBI agent to discuss Simmons's call records. The government never qualified the agent as an expert witness under Rule 702 and instead presented her as a summary witness. The agent testified that the two most frequent callers on June 16 were the same top callers in the weeks before and after the shooting, and also noted that other contacts who were apparently related

8

to Simmons – such as "My Pops" and "Skiesia My Daughter" – regularly called the phone on both June 16 and the surrounding weeks. *Id.* at 344. From this evidence, the agent concluded that the individual using the phone during those weeks – *i.e.*, Simmons – was "likely . . . the same person" who was using the phone on the day of the shooting. *Id.*

Simmons argues that this lay opinion "usurped" the jury's role because it was the jury's function to "review the[] records and determine what, if any, inferences to draw from them." Simmons Br. at 47. But even if it could be argued that the agent improperly drew conclusions better left for the jury, we cannot agree that the opinion itself was so prejudicial as to affect Simmons's substantial rights, as is required to show plain error. *See Groysman*, 766 F.3d at 157 (placing the burden on defendant to show "reasonable probability" that error affected outcome). The government introduced the call frequency records as evidence and presented them to the jury during the agent's testimony. Because the jury was able to review the underlying evidence and reach its own conclusions as to the inferences to be drawn therefrom, it is unlikely that the jury was unduly swayed by the agent's brief statement about the phone's user. The facts here readily distinguish this case from others where the jury did not see all of the

underlying evidence, *see United States v. Grinage*, 390 F.3d 746, 747–48 (2d Cir. 2004) (only thirteen out of 2,000 phone calls played to jury), or where the offered opinion relied on reasoning outside the ken of a lay juror, *see United States v. Garcia*, 413 F.3d 201, 215–17 (2d Cir. 2005) (narcotics agent testifying about operational practices of drug dealers). Nor is this a case in which the opinion was the lynchpin of the government's case, given that the government presented a plethora of evidence – including eyewitness identifications, surveillance video, and Simmons's own inculpatory statements – to establish Simmons's guilt. Accordingly, we are not persuaded that the agent's brief statement about the phone's likely user at the time of the shooting substantially affected Simmons's rights. We thus reject Simmons's claim of plain error.

### B.    Evidence Concerning Internet Search History

Simmons next argues that the district court wrongly admitted evidence that Simmons's cell phone was used to perform an internet search for the query "Glock 22." Because Simmons objected to this evidence at trial, we review for abuse of discretion. *See Kelley*, 551 F.3d at 174–75. Evidence is relevant – and generally admissible under Rule 402 – if it has any tendency to make the existence of any material fact more or less probable. *See United States v. Abu-Jihaad*, 630 F.3d 102,

10

132 (2d Cir. 2010). Even "[n]onconclusive evidence should still be admitted if it makes a proposition more probable than not." *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) (internal quotation marks omitted). Relevant evidence may nonetheless be excluded under Rule 403 if its probative value is substantially outweighed by the risk of prejudice. *See United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006) (citing Fed. R. Evid. 403). We are particularly deferential to a district court's evidentiary rulings under Rule 403, "because a district court is obviously in the best position to do the balancing mandated by Rule 403." *United States v. Contorinis*, 692 F.3d 136, 144 (2d Cir. 2012) (alterations and internal quotation marks omitted).

We see no abuse of discretion in the district court's decision to admit the internet search data. As the district court explained, the internet search was probative of Simmons's ammunition charge because a "Glock 22" firearm shoots the same caliber bullet as the one that struck Bolden; the internet search therefore supported an inference that Simmons knowingly acquired the ammunition that was used to shoot Bolden. *See* App'x at 60–61. This evidence was therefore relevant – and admissible under Rule 402 – because it rebutted Simmons's defense that he was not the shooter and in fact never possessed the ammunition in

11

question.    Given that relevance and the fact that the internet search was far less inflammatory than the evidence of the shooting that was already before the jury, we likewise reject Simmons's argument that the admission of such evidence was unduly prejudicial under Rule 403.   *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

## III.    Attempted Murder Enhancement

Simmons next contends that the district court erred when it calculated his sentencing range on the basis of U.S.S.G. § 2A2.1, the attempted murder Guideline. We review the district court's interpretation of the Guidelines *de novo* and review its findings of fact for clear error.   *See United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005).   We will not reverse a district court's factfinding unless "we are left with the definite and firm conviction that a mistake has been committed."   *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir.) (internal quotation marks omitted), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996).

When a felon possesses ammunition in connection with an attempted murder, the Guidelines instruct the district court to sentence the defendant under U.S.S.G.   § 2A2.1(a),   the   attempted   murder   Guideline.    *See*   U.S.S.G. §§ 2K2.1(c)(1)(A), 2X1.1(c)(1).   To commit attempted murder, the defendant must

12

have acted with the "specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (internal quotation marks omitted).

On appeal, Simmons argues that the district court never found that he acted with specific intent to kill and at most determined that Simmons acted with reckless indifference. We disagree. The district court correctly recognized that section 2A2.1(a) covers "assault *with intent to commit murder*." App'x at 910 (emphasis added). Although defense counsel argued that Simmons lacked "specific intent to kill" because he merely shot Bolden once in the leg, the district court correctly noted that Simmons "chased the victim into the elevator and shot him at close range" before leaving "the victim on the ground bleeding from a wound." *Id.* at 911. On this record, the district court was justified in concluding that Simmons intended to kill Bolden. *See Reilly*, 76 F.3d at 1276; *see also United States v. Stroman*, 498 F. App'x 67, 69–70 (2d Cir. 2012) (affirming finding that defendant intended to kill when he followed two victims into a grocery store and fired a gun at them).

## IV.    Constitutionality of Simmons's Conviction

Finally, Simmons argues that, in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), his conviction under

13

section 922(g)(1) is constitutionally infirm and must be vacated. Because Simmons did not raise this argument below, our review is confined to plain error. As we have explained, "for an error to be plain, it must, at a minimum, be clear under current law, which means that we typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (alterations accepted and internal quotation marks omitted). We upheld the constitutionality of section 922(g)(1) in *United States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013), and neither *Bruen* nor any other binding precedent has reached a contrary holding.

Because the constitutional infirmity asserted by Simmons is not clear under current law, we cannot say that his conviction was plainly erroneous. *See United States v. Brillon*, No. 22-2956, 2024 WL 392949, at *1 (2d Cir. Feb. 2, 2024) (rejecting a post-*Bruen* challenge to the constitutionality of section 922(g)(1) on plain-error review); *United States v. Ogidi*, No. 23-6325, 2024 WL 2764138, at *1 (2d Cir. May 30, 2024) (same); *United States v. Barnes*, No. 23-6424, 2024 WL 5103316, at *1 (2d Cir. Dec. 13, 2024) (same); *United States v. Caves*, No. 23-6176, 2024 WL 5220649, at *1 (2d Cir. Dec. 26, 2024) (same); *United Sates v. Leiser*, No. 23-6665, 2024 WL

5220689, at *2 (2d Cir. Dec. 26, 2024) (rejecting an as-applied challenge on plain-error review); *United States v. Ruhl*, No. 21-2892, 2025 WL 262309, at *1 (2d Cir. Jan. 22, 2025) (same); *United States v. Hardee*, No. 23-6398, 2025 WL 323339, at *1 (2d Cir. Jan. 29, 2025) (rejecting a facial challenge on plain-error review). Accordingly, we see no reason to disturb Simmons's conviction on appeal.

*     *     *

We have considered Simmons's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court